# Richmond.

## R. H. GUTSHALL v. CAROLINE HAMILTON AND SALLIE B. HAMILTON.

### November 16, 1922.

1. DEEDS—*Description—Ejectment—Admission that Defendant's Title is the Older.*—In an action of ejectment where it was admitted by all parties, that the title of the defendant was derived from the Commonwealth and was older than that of the plaintiff, the question of whether the description of the land in an agreement for sale and deed in defendant's chain of title was too vague and indefinite to furnish color of title, becomes immaterial.

2. EJECTMENT—*Title—Plaintiff Must Recover on Strength of his Own Title.*—In ejectment, the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of the title of the defendant.

3. EJECTMENT—*Plaintiff Must Recover upon the Strength of his Own Title—Admission that Defendant's Title is the Older—Case at Bar.*—In an action of ejectment it was admitted by all parties that defendant's title was derived from the Commonwealth and was older than the plaintiff's. Even if this admission is construed to refer merely to the title claimed by the defendant, and not to admit that the defendant had acquired that title; and even if a deed and agreement in defendant's chain of title was so defective in description of the land that there was a missing link in the chain of title claimed by defendant; still as that title is admitted by the stipulation to have been derived from the Commonwealth and to be older than that of the plaintiff, it would constitute an outstanding title superior to that of the plaintiff, which, as it is well settled, would defeat the plaintiff's right of recovery in any aspect of the case, if the land in controversy is in fact located within the bounds fixed by the title papers in that older chain of title.

4. EJECTMENT—*Evidence—Location of Land—Evidence Sufficient to Support Verdict.*—In the instant case, an action of ejectment, the question at issue was whether the tract of land in controversy was located within the boundary lines fixed by the papers of the defendant's older chain of title. There was a conflict in the evidence upon this subject, the county surveyor in his testimony gave it as his opinion that it was not, while a witness for defendant testified of his own knowledge that it was and also to a declaration of a former owner to the same effect.

*Held:* That there was ample evidence to support a verdict for the defendant.

5. EJECTMENT—*Opinion Evidence—Testimony of Surveyor.*—The testimony of a surveyor in an action for ejectment that in his opinion the land in controversy was located within the tract claimed by the plaintiff in so far as he merely gave his opinion, was a conclusion of his which was not of itself evidence, and, although admitted before the jury without objection, it had of itself no probative value. It was a question for the jury, and not for the surveyor, to determine, from the *data* furnished by all the evidence in the case, whether the conclusion to which he testified was a correct conclusion.

6. EVIDENCE—*Hearsay Evidence—Necessity of Objection—Declarations of Former Owner of Real Estate.*—In an action of ejectment a witness testified upon the question of location of the land in controversy to a declaration of a former owner of the land. It did not appear that this declaration was made under such circumstances as to make the declaration proper as primary evidence; and some of the statements of the witness might have been open to objection as hearsay; but no objection was made thereto on the trial, and if incompetent or hearsay evidence is admitted without objection, the jury may properly consider it as evidence in the case.

Error to a judgment of the Circuit Court of Highland county, in an action of ejectment. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action of ejectment instituted by the plaintiff in error, R. H. Gutshall, against the defendants in error, involving a certain tract of 100 acres of land.

The parties will be hereinafter referred to as plaintiff and *defendant*, in accordance with their positions in the trial court, as they are so referred to in the record.

There was a verdict and judgment for the defendant and the plaintiff assigns error.

The plaintiff introduced in evidence title papers tracing his title to the land in controversy back to the Commonwealth. The defendant also introduced in evidence title papers which she claimed traced her title to such land back to one James F. McKinsie, and there is

27

the following stipulation in the record with respect to the title of the defendant:

"It was admitted by all parties that the land was conveyed to James F. McKinsie by Jarvis, and conveyed to Jarvis by the Commonwealth; and that the defendant's title is older than the plaintiff's, wherever her lands may be located."

On the subject of the location of the land in controversy the evidence is as follows:

The plaintiff, in addition to the documentary evidence of his paper title introduced only one witness on the subject of the location of the land, namely, I. L. Beverage, county surveyor of Highland county, whose testimony appears in the record as follows:

"I. L. Beverage, county surveyor of Highland county, testified that the 100 acre tract of land claimed by Sallie B. Hamilton and on which Caroline Hamilton resides is within the tract claimed by plaintiff.

"He testified further that he has done considerable surveying in the neighborhood where plaintiff's land is located and that according to a survey known as the Wilson survey of plaintiff's land and other lands adjoining made many years ago, defendant, Sallie B. Hamilton, has her 100 acre tract of land correctly located. But that according to a later survey of these same lands made by surveyor, Edward J. McGlaughlin, the correct location of the 100 acre tract of land conveyed to Sallie B. Hamilton by Elizabeth F. Carpenter is about one mile from the location which she claims is the true location of her land.   He testifies further that according to his investigations and surveys he believes the true location of the 100 acre tract is something near one mile from the locations she now claims and that the description of the 100 acre tract of land stated in the deed to her shows that she had not correctly located her land.

He further states that the first survey of which he spoke was made by a man named Wilson and that the metes and bounds of the 100 acre tract claimed by defendants show that the true location of the 100 acre tract is one mile away from the tract now in dispute and he exhibited plats made by him which showed this location."

The documentary evidence of the title of the defendant traced the title of the latter from the Commonwealth down to a larger tract of land known as lot 41, of the "Big Survey," and as included in that lot and in a tract of 883 acres conveyed to one Allen Hite by a tax deed from A. G. Cleek, clerk, of date August 15, 1878, recorded February 18, 1879, a portion of which 883 acre tract, which included the land in controversy, was, in 1880, conveyed by Allen Hite to Elizabeth F. Carpenter, by agreement of sale and deed from the latter, the defendant, Sallie B. Hamilton, claims to have derived title to the land in controversy. In addition to such documentary evidence the defendant introduced one witness on the subject of the location of the land, namely, James A. Gillispie, whose testimony appears in the record as follows:

"James A. Gillispie, testified as follows:

"That he had known the Elizabeth F. Carpenter lands for a long time—some thirty-eight or thirty-nine years; that he married a daughter of Elizabeth Carpenter; *that she owned lands which included the 100 acre tract;* that she did not live on this particular tract, but on one near this tract; that she used it chiefly to get timber off of it and sometimes took in cattle to run on it; that at one time Bennett Hiner took in some cattle for Rudolph Turk, and put them on his palmer hacking, and they came down on *Allen Hite who then owned that 100 acre tract,* and Hite would drive them to the public road, and Bennett Hiner moved out there and this was from the piece of

land now in dispute, that witness was well acquainted with George W. Cleek who was the purchaser of the 883 acres of land sold at the tax sale, and conveyed by A. G. Cleek to Allen Hite, *and of which tract the 100 acres is a part;* that George W. Cleek was a surveyor and was familiar with the land, as witness knew he had made a survey of the 45,000 acre tract, known as the big survey, particularly of lots No. 40 and 41 of said survey; and that George W. Cleek told witness *the Elizabeth F. Carpenter lands were located on lot 41, where she claimed and where defendant now claims her lands are located.*"    (Italics supplied.)

*Andrew L. Jones,* and *Jos. A. Glasgow,* for the plaintiff in error.

*Timberlake & Nelson,* and *J. M. Colaw,* for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The sole assignment of error is that the verdict for the defendant was plainly wrong, because it is without evidence to support it.

[1] In the petition of the plaintiff for the writ of error the position is taken that the description of the land in the agreement of sale and also in the deed from Elizabeth F. Carpenter to Sallie B. Hamilton, in the chain of title claimed by the defendant, is too vague and indefinite to furnish even color of title to the land in controversy.    In view, however, of the stipulation appearing in the record, to the effect that it was admitted by all parties, on the trial before the jury, that the title of the defendant was derived from the Commonwealth and is

older than that of the plaintiff, it becomes immaterial for us to consider the position just mentioned, and hence we do not set out the description of the land sought to be drawn in question.

[2, 3] In view of said stipulation, even if it were construed to refer merely to the title claimed by the defendant, and not to admit that the defendant had acquired that title; and even if the deed and agreement mentioned were so defective in description of the land that there was a missing link in the chain of title claimed by defendant; still as that title is admitted by the stipulation to have been derived from the Commonwealth and to be older than that of the plaintiff, it would constitute an outstanding title superior to that of the plaintiff, which, as it is well settled, would defeat the plaintiff's right of recovery in any aspect of the case, if the land in controversy is in fact located within the bounds fixed by the title papers in that older chain of title. The plaintiff must recover, if at all, in a case such as that before us, upon the strength of his own title and not upon the weakness of the title of the defendant.

[4] Accordingly we find that the case was tried in the court below upon the issue of fact (among other issues which have become immaterial in the view we take of the case), as to whether the boundaries fixed by the papers in the aforesaid older chain of title, before the title reached the defendant, included the land in controversy, and the case turns upon the following question, namely:

1. Was there sufficient evidence before the jury to warrant the finding that the 100 acre tract of land in controversy is located within the boundary lines fixed by the papers in the older chain of title?

The question must be answered in the affirmative.

There is a conflict in the evidence upon this subject,

but all of the evidence bearing upon it is set forth above, and it is plain that there was ample evidence to support the verdict.

[5] Indeed the testimony of the surveyor of Highland county, the only witness for the plaintiff on the subject under consideration, in so far as he merely gave his opinion, was a conclusion of his which was not of itself evidence, and, although admitted before the jury without objection, it had of itself no probative value. *Griggs* v. *Brown*, 126 Va. 556, 102 S. E. 212. It was a question for the jury, and not for the surveyor, to determine, from the *data* furnished by all the evidence in the case, whether the conclusion to which he testified was a correct conclusion. Moreover, the testimony of this witness in regard to the true location of the land under the description of the deed to Sallie B. Hamilton, the last link in the chain of title claimed by the defendant, did not go to the root of the matter. As aforesaid, the issue being tried was not that question, but whether the land as claimed by the plaintiff was located within the description of the papers in the chain of title which was outstanding and was older than the title of the plaintiff.

The testimony of Gillispie fully supported the verdict in its finding that the land in controversy is located within the description contained in the papers in the older and outstanding title.

[6] It is true that it does not appear from this testimony that the declaration of the former purchaser of the land referred to was made under such circumstances as to make such declaration proper as primary evidence; and some of the statements of the witness may have been open to objection as hearsay; but no objection was made thereto on the trial. If incompetent or hearsay evidence is admitted without objection thereto, the jury may properly consider it as evidence in the case. *New-*

*berry* v. *Watts*, 116 Va. 730, 82 S. E. 703.   Moreover, the witness, Gillispie, stated that the 100 acres of land in controversy is a part of the land described in and conveyed by the tax deed in the chain of the aforesaid older title as a fact within his own knowledge, not as a mere opinion of his; and the record does not disclose that such fact was not within his own knowledge.

The case must therefore be affirmed.

*Affirmed.*